IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| KJV, LLC and LAF, LLC, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-10-1765 |
| | § | |
| TOTAL BAKING SOLUTIONS, LLC, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs KJV, LLC and LAF, LLC bring this action against Total Baking Solutions, LLC ("TBS") alleging breach of contract concerning two loans that TBS allegedly failed to repay. Pending before the court is TBS's Rule 12 Motion to Dismiss, Request to Stay Discovery, Motion to Dissolve Writ of Attachment, and Request for Expedited Oral Hearing (Docket Entry No. 7). For the reasons explained below, the court will grant TBS's motion to dismiss and will dissolve the writ of attachment.

**I. Factual and Procedural Background**

This action arises from a dispute over two loans made by KJV and LAF to TBS that TBS has allegedly failed to repay. KJV and LAF are both limited liability companies formed under the laws of Utah with their principal places of business in Utah.[1] Defendant TBS, a manufacturer of baking equipment, is a limited liability company

---

[1]Complaint, Docket Entry No. 1, p. 1.

formed under the laws of Montana with its principal place of business in Roundup, Montana.[2] Jurisdiction is based on diversity of citizenship.

The plaintiffs allege that

> [o]n or about November 5, 2009, Plaintiff KJV wired the sum of $200,000.00 which Defendant used as a loan which Defendant was to repay within 30 days. Defendant used the funds to purchase baking equipment for a project in the Dominican Republic . . . Defendant has failed to repay Plaintiff KJV for any portion of the principal of the borrowed funds. . . .
>
> On or about April 2, 2010, Plaintiff LAF delivered a check to Defendant in the amount of $150,000.00 as a loan to Defendant to be repaid within 7 days. Defendant was supposed to use the funds to purchase baking equipment. It appears that Defendant sold this particular equipment with Plaintiff LAF receiving none of the proceeds, and that the IRS subsequently seized these funds. Defendant has repaid Plaintiff LAF only $10,000.00 of the principal of the borrowed funds and has failed and refused to pay the remainder of the loan.[3]

Plaintiffs filed this action on May 17, 2010, seeking $340,000 in damages resulting from TBS's failure to repay the loans (Docket Entry No. 1). On the same day plaintiffs filed an Application for a writ of attachment against the baking equipment stored in container MSCU 5807326, which was in the Port of Houston at that time and was to be shipped to the Dominican Republic onboard the M/V MSC Japan on or around May 21, 2010 (Docket Entry No. 2). On May 18, 2010, the court, having concluded that the plaintiffs had stated a valid prima facie claim against TBS, ordered the issuance

---

[2] Id.

[3] Id. at 2-3.

of a writ of attachment against the baking equipment (Docket Entry No. 3).  The plaintiffs state that the U.S. Marshal seized the property under the writ of attachment on May 19, 2010.[4]

On June 14, 2010, TBS filed several motions aimed at dismissing the case and dissolving the writ of attachment (Docket Entry No. 7).  TBS argues that the case should be dismissed pursuant to Federal Rules of Civil Procedure 12(b)(2) for lack of personal jurisdiction, 12(b)(3) for improper venue, and 12(b)(6) for failure to state a claim upon which relief can be granted.  TBS argues that the writ of attachment should be dissolved because the seized property did not belong to TBS at the time of attachment, but belonged to its client in the Dominican Republic, Lacteos Dominicanos, S.A. ("Ladom").  On June 18, 2010, the plaintiffs filed a Response to TBS's motions (Docket Entry No. 9).  TBS replied on June 24, 2010 (Docket Entry No. 10), and the plaintiffs replied on July 2, 2010 (Docket Entry No. 15).

**II.  <u>Motion to Dismiss for Lack of Personal Jurisdiction</u>**

TBS argues that it is not subject to personal jurisdiction in this action because it has no contacts with the state of Texas and that it should therefore be dismissed under Federal Rule of Civil Procedure 12(b)(2).  The plaintiffs argue that TBS is subject to

---

[4] Plaintiffs' Response to Defendant's 12(b) Motions to Dismiss and Response to Motion to Dissolve Writ of Attachment, Docket Entry No. 9, p. 3.

personal jurisdiction in Texas under a quasi-in-rem theory due to the presence of the attached equipment in Texas.

**A.   Standard of Review**

When a defendant moves to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2) "the plaintiff 'bears the burden of establishing the district court's jurisdiction over the defendant.'"  Quick Technologies, Inc. v. Sage Group PLC, 313 F.3d 338, 343 (5th Cir. 2002), cert. denied, 124 S. Ct. 66 (2003) (quoting Mink v. AAAA Development LLC, 190 F.3d 333, 335 (5th Cir. 1999)).  "When the district court rules on a motion to dismiss for lack of personal jurisdiction 'without an evidentiary hearing, the plaintiff may bear his burden by presenting a *prima facie* case that personal jurisdiction is proper.'"  Id. (quoting Wilson v. Belin, 20 F.3d 644, 648 (5th Cir.), cert. denied, 115 S. Ct. 322 (1994)).  "In making its determination, the district court may consider the contents of the record before the court at the time of the motion, including 'affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery.'"  Id. at 344 (quoting Thompson v. Chrysler Motors Corp., 755 F.2d 1162, 1165 (5th Cir. 1985)).  The court must accept as true the uncontroverted allegations in the plaintiff's petition and must resolve any factual conflicts in favor of the plaintiff.  Adams v. Unione Mediterranea Di Sicurta, 364 F.3d 646, 650 (5th Cir. 2004).

"Absent any dispute as to the relevant facts, the issue of whether personal jurisdiction may be exercised over a nonresident defendant is a question of law to be determined . . . by th[e c]ourt." <u>Ruston Gas Turbines, Inc. v. Donaldson Co., Inc.</u>, 9 F.3d 415, 418 (5th Cir. 1993). However, the court is not obligated to credit conclusory allegations, even if uncontroverted. <u>Panda Brandywine Corp. v. Potomac Elec. Power Co.</u>, 253 F.3d 865, 869 (5th Cir. 2001).

**B.   Personal Jurisdiction**

The exercise of personal jurisdiction over a nonresident defendant comports with federal due process guarantees when the nonresident defendant has established minimum contacts with the forum state, and the exercise of jurisdiction "does not offend 'traditional notions of fair play and substantial justice.'" <u>International Shoe Co. v. State of Washington, Office of Unemployment Compensation and Placement</u>, 66 S. Ct. 154, 158 (1945) (quoting <u>Milliken v. Meyer</u>, 61 S. Ct. 339, 343 (1940)). Once a plaintiff satisfies these two requirements a presumption arises that jurisdiction is reasonable, and the burden of proof and persuasion shifts to the defendant opposing jurisdiction to present "a compelling case that the presence of some other considerations would render jurisdiction unreasonable." <u>Burger King Corp. v. Rudzewicz</u>, 105 S. Ct. 2174, 2185 (1985). Federal courts "sitting in diversity may assert personal jurisdiction if: (1) the state's

long-arm statute applies, as interpreted by the state's courts; and (2) if due process is satisfied under the [F]ourteenth [A]mendment to the United States Constitution." <u>Johnston v. Multidata Systems International Corp.</u>, 523 F.3d 602, 609 (5th Cir. 2008).

### 1. Texas Long-Arm Statute

Texas courts may assert personal jurisdiction "over a nonresident if (1) the Texas long-arm statute authorizes the exercise of jurisdiction, and (2) the exercise of jurisdiction is consistent with federal and state constitutional due process guarantees." <u>See</u> <u>Moki Mac River Expeditions v. Drugg</u>, 221 S.W.3d 569, 574 (Tex. 2007) (citing <u>Schlobohm v. Schapiro</u>, 784 S.W.2d 355, 356 (Tex. 1990)). The Texas long-arm statute authorizes service of process on nonresidents "[i]n an action arising from the nonresident's business in this state." TEX. CIV. PRAC. & REM. CODE § 17.043. The Texas Supreme Court has stated that the long-arm statute's "broad doing-business language allows the statute to 'reach as far as the federal constitutional requirements of due process will allow.'" <u>Moki Mac</u>, 221 S.W.3d at 575 (quoting <u>Guardian Royal Exchange Assurance, Ltd. v. English China Clays, P.L.C.</u>, 815 S.W.2d 223, 226 (Tex. 1991)).

### 2. Minimum Contacts Analysis

"There are two types of 'minimum contacts:' those that give rise to specific personal jurisdiction and those that give rise to general personal jurisdiction." <u>Lewis v. Fresne</u>, 252 F.3d 352, 358 (5th Cir. 2001).

(a)   Specific Jurisdiction

A court may exercise specific jurisdiction over a nonresident defendant if the lawsuit arises from or relates to the defendant's contact with the forum state. ICEE Distributors, Inc. v. J&J Snack Foods Corp., 325 F.3d 586, 591 (5th Cir. 2003). Specific jurisdiction exists where a defendant "purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." Burger King, 105 S.Ct. at 2185. The Texas Supreme Court has recently explained that there are three parts to a purposeful availment inquiry. First, only the defendant's contacts with the forum are relevant, not the unilateral activity of another party or a third person. Second, the contacts relied upon must be purposeful rather than random, fortuitous, or attenuated. Finally, the defendant must seek some benefit, advantage, or profit by availing itself of the jurisdiction. Moki Mac, 221 S.W.3d at 575 (citing Burger King, 105 S.Ct. at 2182).

(b)   General Jurisdiction

General jurisdiction exists when a non-resident defendant's contacts with the forum state are substantial, continuous, and systematic. Johnston, 523 F.3d at 609 (citing Helicopteros Nacionales de Colombia, S.A. v. Hall, 104 S. Ct. 1868, 1872-74 (1984)). "The 'continuous and systematic contacts test is a difficult one to meet, requiring extensive contacts between a

defendant and a forum.'" Id. (quoting Submersible Systems, Inc. v. Perforadora Central, S.A., 249 F.3d 413, 419 (5th Cir. 2001)). "General jurisdiction can be assessed by evaluating contacts of the defendant with the forum over a reasonable number of years, up to the date the suit was filed." Access Telecom, Inc. v. MCI Telecommunications Corp., 197 F.3d 694, 717 (5th Cir. 1999), cert. denied, 121 S.Ct. at 275, 292 (2000). The court views all the defendant's contacts in toto. Id. "[V]ague and overgeneralized assertions that give no indication as to the extent, duration, or frequency of contacts are insufficient to support general jurisdiction." Johnston, 523 F.3d at 610 (citing Gardemal v. Westin Hotel Co., 186 F.3d 588, 596 (5th Cir. 1999)).

**C. Analysis**

1. TBS's Contacts with Texas

TBS argues that it lacks minimum contacts with Texas and, therefore, is not subject to either general or specific personal jurisdiction in Texas. TBS has provided affidavit testimony supporting its claim of no contacts:

> TBS is not licensed or registered in the State of Texas and does not engage in business in the State of Texas. TBS does not have offices, bank accounts, telephone listings, agents, registered agents for service of process, employees, personal property, real property, or other business connections within the State of Texas. Simply put, TBS is a Montana based company that has no connection with the State of Texas.[5]

---

[5] Affidavit of Dave Roberts, Exhibit A to Brief in Support of Total Baking Solutions, LLC's Rule 12 Motion to Dismiss and to Dissolve Writ of Attachment, Docket Entry No. 8, ¶ 2.

-8-

The plaintiffs alleged in their Complaint that TBS "engages in business in Texas,"[6] but have provided no evidence supporting this allegation and have made no other assertions regarding TBS's contacts with Texas. Because the allegation in the Complaint was conclusory, the court is not obligated to credit it. See Panda Brandywine, 253 F.3d at 869.

To defeat TBS's motion to dismiss, the plaintiffs must present evidence establishing a prima facie case that personal jurisdiction is proper. See Quick Technologies, 313 F.3d at 343. Here, the plaintiffs have presented no evidence of contacts by TBS with Texas. There is, therefore, no evidence to conclude that TBS has contacts with Texas that are substantial, continuous, and systematic so as to support general jurisdiction. See Johnston, 523 F.3d at 609. Nor is there evidence to conclude that the lawsuit arises from or relates to the defendant's contact with the forum state so as to support specific jurisdiction. See ICEE Distributors, 325 F.3d at 591. Because the plaintiffs have failed to carry their burden of establishing minimum contacts, the court concludes that TBS is not subject to personal jurisdiction in this action.

The plaintiffs argue that even though TBS does not do business in Texas, it is nevertheless subject to personal jurisdiction under a quasi-in-rem theory because its property has been attached in this district.

---

[6]Complaint, Docket Entry No. 1, p. 2.

2.   Quasi-In-Rem Jurisdiction

Plaintiffs cite two federal admiralty cases for the proposition that a court may assert personal jurisdiction under a quasi-in-rem theory based on the attachment of property found within the court's area of jurisdiction.  See Belcher Co. of Alabama, Inc. v. M/V Maratha Mariner, 724 F.2d 1161, 1163-64 (5th Cir. 1984); Great Prize, S.A. v. Mariner Shipping Party, Ltd., 967 F.2d 157, 159-60 (5th Cir. 1992).  Both of the cases, however, deal with the seizure of vessels under Supplemental Admiralty Rule E. 28 U.S.C., Supplemental Rules for Certain Admiralty and Maritime Claims, Rule E.  Plaintiffs have not alleged that this is an admiralty action and have provided no reason to conclude that Supplemental Admiralty Rule E is applicable.  The cited cases do not address the applicability of in rem jurisdiction outside of an admiralty context.  The court therefore concludes that the cited cases do not support the assertion of personal jurisdiction under a quasi-in-rem theory in this action.

There are limited situations outside of an admiralty context in which a district court may assert quasi-in-rem jurisdiction. Professors Wright, Miller, and Cooper discuss the historical context of this issue:

> Other than in special statutory situations, until 1963 the original jurisdiction of the federal courts could be invoked only by acquiring personal jurisdiction over the defendant through personal service of process. It therefore was impossible to commence an action quasi-in-rem in federal court by attachment or

garnishment. However, this restriction on the means of commencing an action did not bar quasi-in-rem suits from the federal courts entirely; actions commenced either by garnishment or attachment in a state court could be removed to a federal court, assuming the other requirements for removal were met, even though there had been no personal service in the state court proceeding. There was no constitutional obstacle to the commencement of actions in federal court by means other than personal jurisdiction. The problem was that no general statute or Federal Rule of Civil Procedure expressly provided for that procedure.

This situation was changed by the 1963 amendment to Federal Rule 4(e) (now Federal Rule 4(n)), which expressly authorizes the institution of an original action in a federal court by attachment or garnishment if the state in which the district court is sitting permits that method of commencing a suit.[7]

Rule 4(n) provides:

(n) Asserting Jurisdiction over Property or Assets.

(1) Federal Law. The court may assert jurisdiction over property if authorized by a federal statute. Notice to claimants of the property must be given as provided in the statute or by serving a summons under this rule.

(2) State Law. On a showing that personal jurisdiction over a defendant cannot be obtained in the district where the action is brought by reasonable efforts to serve a summons under this rule, the court may assert jurisdiction over the defendant's assets found in the district. Jurisdiction is acquired by seizing the assets under the circumstances and in the manner provided by state law in that district. FED. R. CIV. P. 4(n).

The plaintiffs have not given the court any reason to conclude that jurisdiction under Rule 4(n) applies in this action. First,

---

[7]Charles Alan Wright, Arthur Miller, and Edward Cooper, <u>Federal Practice and Procedure</u>, § 3631 In Rem and Quasi-in-Rem Actions. Citations omitted.

the plaintiffs have not identified any federal statute that would support jurisdiction under Rule 4(n)(1).  Second, while Rule 4(n)(2) could theoretically apply, the facts of this case fall outside of the situations in which case law and the comments to Rule 4 envision courts exercising jurisdiction under this provision.  The Comments to the 1993 Amendments to Rule 4 state:

> Paragraph (2) provides for other uses of quasi-in-rem jurisdiction but limits its use to exigent circumstances. Provisional remedies may be employed as a means to secure jurisdiction over the property of a defendant whose person is not within reach of the court, but occasions for the use of this provision should be rare, as where the defendant is a fugitive or assets are in imminent danger of disappearing.  Until 1963, it was not possible under Rule 4 to assert jurisdiction in a federal court over the property of a defendant not personally served. The 1963 amendment to subdivision (e) authorized the use of state law procedures authorizing seizures of assets as a basis for jurisdiction. Given the liberal availability of long-arm jurisdiction, the exercise of power quasi-in-rem has become almost an anachronism.  Circumstances too spare to affiliate the defendant to the forum state sufficiently to support long-arm jurisdiction over the defendant's person are also inadequate to support seizure of the defendant's assets fortuitously found within the state.  <u>Shaffer v. Heitner</u>, 433 U.S. 186 [97 S.Ct. 2569, 2581] (1977).  [FED. R. CIV. P. 4, Comments to the 1993 Amendments]

The Supreme Court case cited in the Comment states that

> in order to justify an exercise of jurisdiction in rem, the basis for jurisdiction must be sufficient to justify exercising "jurisdiction over the interests of persons in a thing."  The standard for determining whether an exercise of jurisdiction over the interests of persons is consistent with the Due Process Clause is the minimum-contacts standard elucidated in <u>International Shoe</u>.  <u>Shaffer</u>, 97 S. Ct. at 2581.

Thus, a district court may only assert quasi-in-rem jurisdiction over a party under Rule 4(n)(2) if that party's interests meet the

"minimum-contacts standard elucidated in International Shoe." Because the plaintiffs have failed to show that TBS has any contacts with Texas, and because there has been no allegation that the equipment is present in Texas as part of an effort by TBS to conduct business in Texas, the court concludes that TBS's interests in the attached property do not meet the minimum-contacts standard. The court therefore concludes that quasi-in-rem jurisdiction under Rule 4(n)(2) does not apply to this action. Furthermore, as discussed below, TBS has presented evidence that it had no interest in the property at the time of attachment that would support attachment.

    3.   <u>TBS's Interest in the Attached Property</u>

Even aside from the lack of evidence of minimum contacts, the court would not assert quasi-in-rem jurisdiction on the basis of the attached property because TBS has presented evidence showing that it did not have an interest in the property at the time of attachment that would support attachment under Texas law. TBS has provided affidavit testimony stating:

> [The attached equipment] does not belong to TBS. The equipment in the container was sold F.O.B. (Free on Board) and the title transferred to Ladom in Montana when it loaded for shipping. The equipment was loaded in Round-up, Montana and a third party shipping company took control of it. Ladom paid for the shipping of the equipment from Round-up, Montana to the Dominican Republic. TBS did not have any control over the route selected for the equipment to be shipped. TBS has no property or security interest of any kind in the equipment.[8]

---

    [8]Affidavit of Dave Roberts, Exhibit A to Brief in Support of Total Baking Solutions, LLC's Rule 12 Motion to Dismiss and to Dissolve Writ of Attachment, Docket Entry No. 8, ¶ 4.

The attached May 11, 2010, invoice for the shipment includes a term stating "F.O.B. Roundup, MT."[9]  "F.O.B." or "free on board" is a "method of shipment whereby goods are delivered at a designated location, usually a transportation depot, at which legal title and thus the risk of loss passes from seller to buyer."  SEB S.A. v. Montgomery Ward & Co., Inc., 594 F.3d 1360, 1366-67 (Fed. Cir. 2010).  The plaintiffs have presented no evidence that the term stated on the invoice does not correctly describe the location at which title to the equipment passed.  The court therefore concludes that title to the equipment passed from TBS to Ladom in Round-up, Montana, on or about May 11, 2010, and consequently that the equipment did not belong to TBS when it was later attached in Texas.

Under Texas law "[a] writ of attachment cannot be had against property . . . [that] is not property of the debtor that is subject to execution and not property which the debtor can pass title by his sole act."  Milberg Factors, Inc. v. Hurwitz-Nordlicht Joint Venture, 676 S.W.2d 613, 616 (Tex. App. -- Austin 1984, writ ref. n.r.e.).  See also Shaw v. Frank, 334 S.W.2d 476, 480-481 (Tex. Civ. App. 1959, no writ) ("[N]o property or interest in property is subject to sale under execution or like process unless the debtor, if sui juris, has power to pass title to such property or interest

---

[9]Invoice No. 168, May 11, 2010, Exhibit B to Brief in Support of Total Baking Solutions, LLC's Rule 12 Motion to Dismiss and to Dissolve Writ of Attachment, Docket Entry No. 8.

in property by his own act.") (citing Moser v. Tucker, 26 S.W. 1044, 1045 (Tex. 1894)). Because TBS did not have power to pass title to the property by its sole act at the time of the attachment, the attachment was improper. Because the attachment was improper, it cannot provide a proper basis for quasi-in-rem jurisdiction.

Although the plaintiffs stated a valid prima facie claim for attachment (Docket Entry No. 2), TBS has presented evidence showing that the attachment was improper. The court will therefore order that the writ of attachment be dissolved. See Milberg Factors, 676 S.W.2d at 616 (holding that a trial court correctly dissolved a writ of attachment where the evidence showed that the debtor had no interest in the attached property at the time of attachment).

### 4. TBS's Right of Reclamation

The plaintiffs argue that even if TBS did not possess title to the property at the time of attachment, attachment was still proper because TBS retained a lien to the property through the seller's right of reclamation under U.C.C. § 2-507(b) and Comment 3 to that section. See TEX. BUS. & COM. CODE § 2.507(b) and Comment 3 ("This subsection (2) codifies the cash seller's right of reclamation which is in the nature of a lien."). Plaintiffs argue that this lien was applicable because the invoice provided by TBS shows a total due of $219,150 and contains the term "Due on receipt,"[10]

---

[10]Id.

which plaintiffs interpret to mean that Ladom still owed TBS a payment on the shipment at the time of attachment. Plaintiffs argue that because Ladom owed TBS money for the equipment, TBS possessed a lien on the equipment that rendered it subject to attachment in an action against TBS.

TBS argues that no such lien existed because "Ladom had already paid for the equipment in its entirety at the time of shipment,"[11] and thus TBS possessed no right of reclamation under U.C.C. § 2-507(b). The evidence provided by TBS in support of its assertion that Ladom had already paid for the equipment is somewhat ambiguous. TBS has provided evidence of a May 5, 2010, wire transfer of $446,743.50 from Ladom in payment of Invoice 134, dated February 1, 2010. The February 1, 2010, invoice appears to include at least a large portion of the equipment seized in the Port of Houston,[12] as described in the May 11, 2010, invoice, which stated that $219,150 was due on shipment, and contains the term "Due on receipt."[13] Notwithstanding the alleged payment of the February 1,

---

[11]Supplemental Affidavit of Dave Roberts, Exhibit 1 to Total Baking Solutions' Reply in Support of its Rule 12 Motions to Dismiss, Request to Stay Discovery, Motion to Dissolve Writ of Attachment, and Request for Expedited Oral Hearing ("TBS's Reply"), Docket Entry No. 10, ¶ 3.

[12]See Invoice 134, February 1, 2010, Tab 1 to Supplemental Affidavit of Dave Roberts, Exhibit 1 to TBS's Reply, Docket Entry No. 10; see also First United Bank Outgoing Wire Transfer, Tab 2 to id.

[13]Invoice No. 168, May 11, 2010, Exhibit B to Brief in Support of Total Baking Solutions, LLC's Rule 12 Motion to Dismiss and to Dissolve Writ of Attachment, Docket Entry No. 8.

2010, invoice, the May 11 invoice appears to show that Ladom owed TBS money on the shipment at the time of the May 11 transfer of the equipment. The court does not need to resolve this factual dispute, however, because even if TBS possessed a right of reclamation lien on the property at the time of attachment, the existence of such a lien would not have made attachment proper.

The precise question is whether a creditor in Texas can attach property pre-judgment on the basis of a debtor's right of reclamation lien under U.C.C. § 2-507(b) when a third party holds title to that property. The plaintiffs cite several cases on this issue, but none of them are relevant. Because the cases cited by plaintiffs deal with the rights of a U.C.C. Article 9 secured party holding a default judgment (Conseco Finance Servicing Corp. v. Cabrera, 190 S.W.3d 41 (Tex. App. -- Amarillo 2005)), the power of a trial court to retain marital funds in a court registry in violation of a divorce decree (Sharman v. Schuble, 846 S.W.2d 574 (Tex. App. -- Houston [14th Dist.] 1993)), and the question of whether a creditor has a cause of action against a third party holding a warranty deed to a debtor's attached real property (Lipscomb v. Rankin, 139 S.W.2d 367 (Tex. Civ. App. 1940)), the court concludes that these cases do not address the question at hand. Because plaintiffs have failed to support their argument that a seller's right of reclamation can provide a proper basis for attachment in this context, the court concludes that the applicable law is the rule stated above, that is, "[a] writ of attachment

cannot be had against property . . . [that] is not property of the debtor that is subject to execution and not property which the debtor can pass title by his sole act." Milberg Factors, 676 S.W.2d at 616. Because TBS's right of reclamation lien, if such a lien existed, would not have made the equipment "property which the debtor can pass title by his sole act," the court concludes that attachment would have been improper whether or not TBS possessed the lien.

  5.  Fair Play and Substantial Justice

If any of the above conclusions were debatable, the court would still decline to exercise jurisdiction on the grounds that doing so would "offend 'traditional notions of fair play and substantial justice,'" see International Shoe, 66 S. Ct. at 158, because the path to jurisdiction argued by plaintiffs is too attenuated. A party who passes title to property to another party in its home state will not reasonably expect to be haled into court in a second state based on the fortuity that the property was shipped through that second state; to hold otherwise would potentially subject TBS to quasi-in-rem jurisdiction in every state the equipment passed through between Montana and the Dominican Republic. Because applying the plaintiffs' proposed quasi-in-rem theory in this action would produce a patently unfair result, the court concludes that it does not have personal jurisdiction over TBS.

**D. Conclusion**

Because TBS lacks minimum contacts with Texas, and because exercising personal jurisdiction over TBS would offend traditional notions of fair play, the court concludes that TBS is not subject to personal jurisdiction in this action. The court will therefore grant TBS's Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction. Because this motion is dispositive of the action, the court will not address TBS's motions to dismiss under Rules 12(b)(3) and 12(b)(6).

### III. Conclusion and Order

For the reasons stated above, the court concludes that TBS is not subject to personal jurisdiction in this action. Therefore, TBS's Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(2) (Docket Entry No. 7) is **GRANTED**. Furthermore, because TBS did not have title to the baking equipment at the time of attachment, the court concludes that the attachment was improper and TBS's Motion to Dissolve Writ of Attachment (Docket Entry No. 7) is **GRANTED**.

**SIGNED** at Houston, Texas, on this 26th day of July, 2010.

SIM LAKE
UNITED STATES DISTRICT JUDGE